May it please the court. My name is Sarah Vanessa Perez and I represent the petitioner in this case, Jose Antonio Sanchez Reyes. The first issue that I'd like to begin with in this case has to do with past persecution. In this case, the facts, very briefly recited, have to do with a 17-year-old petitioner coming to the United States after the death of his his nephew and the son of the first brother, all in that same incident. Subsequent to that, about a week later, his cousin is also killed by the same cartel, the Cetas cartel, and continuously after that, his parents receive threats, death threats, directly related to his brother Carlos, the second brother that was killed. The family at that point is forced to move almost immediately to another part of town, about three hours away from where this happened, and up to the date when testimony was taken in this case, the parents were continuously receiving threats. The case that both the immigration judge and the Board of Immigration Appeals relied on principally to find that there had been no past persecution was Tamang v. Holder. That's a 9th Circuit 2010 case. In that case, it says that harm to others may not substitute for harm to the petitioner when he was not in the country and not directly impacted. This case is distinguishable from Tamang. For one, the first incident of persecution that occurred towards the family happened when the petitioner was in Mexico, so he was not out of the country. With regards to the second incident having to do with the other brother and the cousin, and with regards to the parents, he was in the United and these acts of persecution... I have a question about the social group. The immigration judge made a finding that your client's family was not a socially distinct group, and I don't see that any challenge to that was made before the agency. Was there a challenge to that finding? We argued that there was a challenge made and that the BIA's decision was erroneous. Specifically, the town that the petitioner came from was a small town. In the record, I believe it's erroneously spelled, but it's actually Chimaltitan, Jalisco, Mexico. It's a town of about 3,000 persons. We would argue that that would have been a judicially noticeable fact, that it was a small town, and that the family was known therein. There were some arguments... Can you just point me, either now or I don't know if you reserved any time, but could you just point me to where in the record that your client raised that claim about his family being socially distinct so that the BIA could review it? Correct. There were actually two briefs that were submitted to the record at about page 24 where this was addressed. I'm not sure if you're also asking with regards to the Ninth Circuit briefing. I wouldn't be able to point to that. No, I think you answered my question. 24 is where he raised it for the BIA. Correct. There might have been some also in the first brief, but that's what I pinpointed for today. Do I understand that in addition to his parents, he also has two siblings in Mexico? He does, but those siblings were not living near the parents at the time. When all of this happened, the family was living in this small town. One of the siblings was living in Guadalajara, which is about three hours away from that town, and that's where the parents ultimately moved to, not with the sibling, but to the same town. The other sibling was living in a different state. Okay, but in other words, there's no evidence that he's not aware of anything that they've been threatened or harmed, have they? Correct. He has not, but he also testified that he did not have contact with those siblings, so I'm not sure if those siblings had at that point just not been in contact with the family or very closely related to the family. But the fact that, I mean, the parents have been received death threats, but they've actually not been actually physically harmed in any way, have they? They have not, but he also testified that the parents were elderly, that they were not working, they were homebound, and there is testimony on the record that they really weren't going out. So they weren't very visible. They were receiving phone calls. They changed their cell phone number several times, and notwithstanding that, they still received these threats. But your only remaining ground here really is withholding of removal, is it not? That's correct. And you've got the burden of showing that it's more likely than not that your client would be What in the record is your evidence that would make it more likely than not that he would be harmed? Well, we were arguing in this case that, first, that there should have been a finding of past persecution, and so that the rebuttable presumption should have kicked in. With regards to that, like I said, the court and the board were relying on Tamang, which I believe is a distinguishable case based on the fact that some of this evidence happened, I mean, some of these events happened at the time that he was in the country. I also cited two other cases having to do with political opinion and how an imputed political opinion can be imputed to family members when they can be imputed to family members. If we disagree with you on past persecution, then what's your evidence for likelihood of future? The continuing threats to the family members, and then to the extent that the particular social group really wasn't drawn out. So the immigration judge initially found that there was no social distinction. And what's your best case that actually supports your position on that? With regards to particular social group, well, the... Well, no, going to the likelihood of being persecuted. Well, the continuing threats with regards to the family members and the fact that if he were to return to Mexico, there was evidence taken that these persecutors knew who he was, that there was Right, but is there a case with comparable facts that you can cite and say, ah, see, the Ninth Circuit's already held that? The close... I did cite... I did file a supplemental citation last night regarding a case called Sumolong v. Holder. In that case, they did find that one way to prove persecution in the past was giving rise to a rebuttable presumption was... when that harm is, at least in part, directed against the parent on account of or because of a protected ground. And so in that case, the court did find that you could impute past persecution to somebody to the extent of the well-founded fear of future persecution. He does have a fear of returning, and he believes that the threats against his parents are credible because they keep finding them. Right, but a well-founded fear is the standard for asylum, and you're doing... Clear probability. I apologize. And you've got to do more than just reasonable fear, right? I apologize, yes. Clear probability. And he is not similarly situated to his parents to the extent that he's a younger individual. If he did return to Mexico, he would be visible. He would have to work. He would have to support himself. If these persecutors were to be made aware that he was in Mexico based on his theory that they are after his family, he would be at risk. That's a really hard sell, it seems, where we've got a period of multiple years where both parents and siblings are still in Mexico. The threats are happening, but no follow-through on those threats. And the argument that you're making is he's going to be at more risk than everyone else who's been there all these years? That seems... What tells us that? Just the fact that he's just been in contact with the parents, and the fact that they are receiving these threats, and they believe that they are credible threats, and that he's not similarly situated to them with regards to that. And if I could, I only have a minute and 30 seconds. Thank you. All right. Counsel for the government, Ms. Pino. Good morning, Your Honors, and may it please the Court. Tatiana Pino for the Attorney General. This Court should deny the petition for review for three reasons. First, the Court need not even reach the merits of this case to deny the petition, because as squarely argued in the government's brief and never rebutted by petitioner, petitioner waives any meaningful challenge to the dispositive grounds for the agency's denial of withholding of removal and cap protection, the only two claims properly before this Court. Second, even if the Court were to reach the merits, the record does not compel reversal of the agency's denial of withholding of removal, because the agency reasonably found on this record that even if petitioner had established that his family is a cognizable particular social group, his failure to show past persecution or the required clear probability of future harm on account of his family membership, dooms his withholding of removal claim. And third, the record does not compel reversal of the agency's denial of cap protection, because on this record the agency reasonably found that petitioner failed to show that he would more likely than not face a particularized risk of torture greater than that faced by all Mexican citizens, or that the Mexican government would acquiesce to such torture at the hands of cartels. So would you focus on the exhaustion of the withholding claim and why you think that all of the dispositive issues were not exhausted? Sure. If you read petitioner's opening brief, petitioner makes no challenge to the substantive underlying findings by the agency to support the dispositive, no clear probability of future harm determination. Those underlying determinations were that petitioner's and his two brothers' ability to remain unharmed in Mexico for nearly 15 years, since the last relative was harmed, undermines his objectively reasonable fear on account of his family, a particular social group. It was also that his fear of return to Mexico is the fear of rampant violence that exists generally throughout the country, and this is insufficient to show an objectively reasonable fear on account of a protected ground. So I agree with you. I think that we've got a, as I was saying before, it's sort of a hard sell. But I'm not seeing how that issue wasn't exhausted because the petitioner has been arguing those things all the way through, it seems. Well, Your Honor, I want to also clarify, it's not that it wasn't exhausted, it was that it wasn't meaningfully developed in her brief to this court. She has one line in her brief, and I think it's in, she actually puts it in the cat section of her brief, and she says something along the lines of, there is more likely than not, he does face a fear, he does have a fear that is more likely than not that he will be persecuted on account of a protected ground, period. There is no further development of, she doesn't point to any evidence that compels reversal of the agency's finding here. And I have to remind the court, this question is reviewed under the highly deferential substantial evidence standard. The court can only reverse the agency's finding if it finds that the record compels reversal, that no reasonable fact finder could find as the agency did here. Petitioner points to no evidence to meet that standard. Let me ask you this. You know, one thing I saw the IJ says that the parents have lived, quote, without incident in Mexico. Aren't death threats more than just, more than without incident? I mean, there are some cases, aren't there, that say that even a death, a credible death threat can be persecution? Well, Your Honor, I think you just hit the nail on the head with the word, a credible death threat. What parents have, they have received phone calls. Now, but the callers are anonymous. They never specify why they're calling. There is no evidence to suggest that they, these calls are in any way related to the past harms that his relatives have suffered. There's no evidence that these are callers, that the callers are cartel members. The threats are not substantiated by further mistreatment like you would have in perhaps another case. And the agency went as far to compare the threats. Actually, I should say contrast this case to cases like Mashiri from 2004 and Ruano. And in which, in those cases, you had violence and death threats that were accompanied by further mistreatment. And it's typically not, it typically takes a death threat plus something else to rise to the level of past persecution. And there's no evidence of that here. And so, while the IJ's phrase perhaps is inarticulate, it's clear that the threats alone did not rise to the level of past persecution. Especially to Petitioner, where Petitioner admitted that the threats had, the callers have never mentioned him at all in any of these threats. So he has faced no direct harm as a result of these threats. I want to circle back to one more procedural question. I believe the government is arguing that, particularly with regard to social distinction, that that issue was not exhausted. Is that your argument? It was not exhausted to the board, yes. My question is, where our precedent establishes that when the board cites Bourbono, then everything that the board talked about and everything that the IJ talked about is exhausted. How does that authority not establish that the social distinction question was exhausted here because the IJ talked about it? Your Honor, there is case law from the circuit. I point you to a BB, which is a 2005 en banc case. And there's other case law that says that when the board expressly declines to reach an issue from the immigration judge, that that is cards out of Bourbono. And in this case, we have the board saying that Petitioner did not meaningfully challenge the social distinction issue. And on that basis alone, it was dispositive. And so the board never, with that language, the board never adopted and affirmed the way that it typically would if it had not had that language. And I'll also, I know Petitioner's counsel had a discussion with, I believe it was Judge Thomas. And Judge Thomas, your question was where in the, in her two briefs that she submitted to the board, did she raise social distinction? If you look at those briefs and you can look at page 53 of her original brief and 24 of her supplemental brief, she never mentioned social distinction. She never mentions, and the test for social distinction, by the way, is how the society in question perceives, in this case, the family relationships. And whether that, those, these family units are distinct within that society. She never asserts that Mexican society in any way perceives extended relatives to include cousins and nephews as a group. And so, again, this further supports the BIA's determination that she did in fact waive it. And she tries to argue today for the first time and point you to that evidence today for the first time. But if you look at it closely, it doesn't exist in her briefs. So, let's see. And Judge Forrest, I think you had raised the question or the issue of the long period of time that I passed without harm here. And that is key to the, to finding, to the board's finding that there was no clear probability of future persecution on a protected ground. The evidence does not compel reversal. Lastly, I'd like to address, just very briefly, the case cited in Petitioner's 20HA letter. I will note she filed this letter less than 20, less than 12 hours before today's argument. But nevertheless, it's of no moment. The cases of 2013 case, she had ample time to consider and include this case in her opening brief. She failed to do so. And as regards to this point and any other arguments today raised for the first time, the court's 2017 decision in Diego v. Sessions instructs that the court should deem any arguments waived because they were not specifically and distinctly argued in the opening brief. With that, if there are no further questions, for the reason discussed today and those laid out in the government's brief, the government respectfully requests that you deny the petition for review. Thank you very much. Thank you, Counsel. Ms. Perez, I believe you have a little bit of time. I just have three quick matters, unless there's questions specifically with regards to the parents having lived without incident. I would just direct the court's attention to the administrative record at page 215. That's the transcript where the testimony was taken with regards to that point on the following pages. The second issue having to do with matter of LEA. The board dismissed the particular social group, finding that it had been waived, but then goes and relies on matter of LEA to find that most nuclear families are not inherently socially distinct. That case was thereafter vacated, and I believe that it was improper for the board to... According to the exhaustion point, then, would your argument be that even if it said, on the one hand, it was carving that issue out, which is what your opposing counsel argues, that by further commenting on the LEA point that it's actually addressing it? Yes, I would. And then the third point with regards, again, to clear probability of future persecution, if maybe I can just maybe be a little bit clearer. The BIA found that the murders happened many years ago. The parents and the siblings have remained in Mexico without harm since the cousin's death, and that the anonymous callers have not taken action on their threats. In response to that, I would cite to Zhao v. Mukasey, 9th Circuit, 2008, that the continued presence of family members in the country of origin doesn't necessarily rebut the well-founded fear. In that case, it was well-founded fear, unless there is evidence that the family was similarly situated. And, again, I did make arguments with regards to the fact that the petitioner in this case is not similarly situated to the parents who are still there, and they comprise the same family unit. But, again, there was testimony with regards to how they are residing in Mexico. All right. Thank you, counsel. The matter of Sanchez-Reyes v. Garland will be submitted, and we thank you for your helpful arguments.
judges: Gilman, FORREST, THOMAS